IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

CURTIS URQUHART                                                                                PLAINTIFF

1:04CV00022HDY

JOHN HEIER, et al.                                                                              DEFENDANTS

## PROPOSED FINDINGS & RECOMMENDATION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence proffered at the hearing before the District Judge  (if such a  hearing is granted)  was not  offered at  the hearing before the Magistrate Judge.

3.   The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of

>proof, and a copy, or the original, of any documentary or
>other non-testimonial evidence desired to be introduced at
>the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite 402
>Little Rock, AR 72201-3325

**DISPOSITION**

A trial was held in this case before the Court on November 21, 2005. Following a presentation of the testimony of the parties and submission of exhibits, the Court enters the following proposed findings and recommendation.

**I.  Facts**

Plaintiff originally filed this action pursuant to 42 U.S.C. § 1983 while incarcerated at the Arkansas Department of Correction (ADC). He was released from incarceration in April, 2005. In his complaint, plaintiff alleges that in June, 2003, he was housed at the North Central Unit of the ADC when a riot occurred and he and many other inmates were taken out of their barracks, stripped of their clothes and handcuffed behind their backs, and forced to stay in a hallway of the Unit for six-seven hours. Plaintiff alleges that all defendants were involved in some way and that he asked many of the defendants for clothes or to loosen his handcuffs. Plaintiff asks for monetary relief for physical and emotional pain and suffering.

**A. Plaintiff's Testimony**

According to the testimony of the plaintiff, he was incarcerated in 1 Barracks of the North Central Unit in June, 2003, when a riot broke out at the Unit in another barracks. The disturbance spread to his barracks, involving fights between black and white inmates, and about 12:40 a.m. guards came into the barracks and ordered all the inmates to strip of their clothes and be placed in cuffs behind their backs. The inmates were then placed in a hallway near the clothing/laundry room and were forced to stay there until about 7:30 a..m. Plaintiff, who is black, states that about 25-30 black inmates were in the hallway with him during this time and that female officers could walk by them while they were nude, or see them in the monitors attached to the video cameras located in the hallway. Plaintiff stated that the plastic handcuffs on his wrists were too tight and caused numbness in his hands and arms. Plaintiff also stated that he was upset about being nude around women guards.

Plaintiff acknowledged that despite the tight handcuffs, he wrote a grievance about the incident the next day, and later wrote the original complaint against the defendants.

**B. Defendants' Testimony**

Defendant Elmer Bolia was the Building Captain at the North Central Unit at the time of the incident at issue. He investigated the riot on June 23-24, 2003 and filed a report of the incident, which is defendants' Exhibit 1. According to his testimony and the report, earlier in the day of June 23, 2003, a mock fire drill was held at the Unit and one of the inmates who was showering at the time of the drill refused to leave the shower area. As a result, the inmate was disciplined and taken to isolation. That inmate's cousin, who was housed in 4 Barracks of the Unit, became upset about the punishment and started beating other inmates. This escalated into a riot involving about 100

inmates in three different barracks and resulted in both property damage to the barracks and physical injury to many inmates. Bolia testified that initially it was difficult to identify the perpetrators and the victims and that many inmates required serious medical attention at the infirmary. He further stated that no one told him their restraints were too tight, and to his knowledge, none of the inmates placed in the hallway following the incident suffered injury.

Defendant John Moss, who was Assistant Warden of the Unit at the time, testified that he was not present during the incident, since he was a member of the Arkansas National Guard and was stationed at Fort Chaffee at that time.

Defendant Sara McQuilliams, who is presently Warden of the Benton Unit, was Warden of the North Central Unit in 2003. She testified that the incident at issue was a major event at the Unit and was a "very scary" situation. She acknowledged that plaintiff filed grievances about the incident, including one complaining about a loss of two t-shirts, a sweatshirt, and a cross necklace during the incident. Defendants' Ex. 4. However, according to plaintiff's personal property record signed by plaintiff and an official at the Unit on June 26, 2003, all plaintiff's property was returned to him following the incident. Defendants' Ex. 5. In addition, McQuilliams testified that the plastic cuffs which were used to restrain the inmates following the incident were used because of the large number of inmates involved and were not as binding as metal restraints. McQuilliams also stated that all officers at the Unit were required to have training associated with the use of those restraints.

Defendant Larry May, Deputy Director of Operations for the ADC, testified that he supervises several areas of the ADC including the medical records of the inmates. He stated that he asked the medical records supervisor to conduct research of the plaintiff's medical records during the time following the June, 2003 incident, and that no record was found that plaintiff complained

about a wrist injury or reported an altercation involving physical injury to him during that time period.

Finally, defendant Curtis Meinzer, Chief of Security at the Unit, testified that at the time of the incident he was the leader of the Emergency Response Team (ERT), and was notified on the evening of June 23, 2003 of the riot. He stated that he developed a tactical plan to restore order to the Unit, which initially involved setting off two smoke grenades in 4 Barracks in order to remove the instigator and the injured inmates from the barracks. He then moved to 3 Barracks where he ordered the inmates to return to their racks, directed them to strip in order to check for weapons, and then moved them to a more secure area in the Unit. He stated that he repeated this process with the inmates in 1 Barracks, where plaintiff was housed, and permitted all inmates to wear their canvas shoes in order to prevent injuries from broken glass. Meinzer further stated that requiring inmates to disrobe is part of ADC procedure in several situations, including emergencies and prior to placement in isolation or segregation. The inmates were removed from the barracks in order to allow officials to clean the barracks of the debris and broken glass, to fix mechanical problems to television sets and other damaged property, and to search for weapons which may have been left behind. Meinzer also stated that during this time the Arkansas State Police were at the Unit to conduct a criminal investigation of the riot. He did not recall plaintiff asking for clothing or to have his restraints loosened, and stated that the inmates were cuffed because of safety concerns and because they were not sure of the identity of all the perpetrators at the time. He also stated that plaintiff's group of inmates were placed in the hallway because it was a secure area, and that a doorway was left open at the end of the hallway for safety reasons for the two guards in charge of those inmates. Meinzer acknowledged that there were some female officers on the morning shift, together with a

female employee in the kitchen. He stated that he was unsure whether any female officers were present during the night shift, and further stated that all the members of the ERT were male.

## II. Law

The Eighth Amendment "does not mandate comfortable prisons, but does impose a duty on prison officials to provide humane conditions of confinement," Farmer v. Brennan, 511 U.S. 825, 832 (1994). While the Eighth Amendment does protect inmates from unnecessary and wanton infliction of pain by correctional officers [Whitley v. Albers, 475 U.S. 312, 319 (1986)], officers are permitted to use force reasonably, "in a good-faith effort to maintain or restore discipline," but not "maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

In determining whether excessive force was used in a particular situation, courts consider whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. Id. See also Treats v. Morgan, 308 F.3d 868 (8th Cir. 2002).

In this particular case, the parties did not dispute that the riot occurred, that plaintiff was stripped of his clothes and placed in plastic cuffs behind his back, and that he was placed in a hallway with other inmates for about six hours. However, plaintiff did not provide any proof, other than his testimony, of injury to his hands and arms as a result of his restraints. Furthermore, plaintiff did not provide any proof that defendants acted maliciously and sadistically to cause harm to him. Rather, defendants all testified about the severity of the situation at the Unit which involved numerous injuries and property damage, and the need to restore order to the Unit as quickly as possible. There was no testimony presented that plaintiff or any others suffered injuries during the

time following the riot while the prison officials were attempting to restore order to and clean up the Unit. Defendants presented evidence of a need for the force they used, since they were unaware of the identity of all the perpetrators involved and needed to strip the inmates during a search for weapons. The Court finds that the relationship between that need for force and the amount of force used, together with the perceived threat of harm from many inmates, was reasonable, and the plaintiff failed to prove any injury as a result. Therefore, the Court finds that plaintiff did not prove a violation of the Eighth Amendment by the defendants, and that his complaint against them should be dismissed. Accordingly,

IT IS, THEREFORE, RECOMMENDED that plaintiff's complaint against defendants be DISMISSED with prejudice.

IT IS SO RECOMMENDED this  22   day of   November   , 2005.

_____
United States Magistrate Judge